IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FREDDIE L. WILLIS,

　　　　　　Plaintiff,

vs.

CITY OF OMAHA NEBRASKA, CHARLES SWEENEY, in his individual capacity; and CORY BILLINGS, in his individual capacity;

　　　　　　Defendants.

8:22CV147

MEMORANDUM AND ORDER

Plaintiff Freddie L. Willis alleges that he was subject to an anal body cavity search at the hands of two Omaha Police Department officers. He sued the two officers under 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendments and asserted a claim under *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978) against the City of Omaha. Defendants now move for summary judgment on Mr. Willis' claims. (Filing No. 85.) The Court will grant their motion.

## BACKGROUND

The events giving rise to this case were set in motion in the early hours of May 21, 2020. After drinking alcohol, smoking marijuana, and using cocaine, Mr. Willis drove to a friend's house in Omaha, Nebraska. (Filing No. 86.) There, he was involved in an altercation with Michael Hill around 2:00 a.m. (Filing No. 86.) Mr. Hill stabbed Mr. Willis in the face and arm. (Filing No. 86; Filing No. 88-8.) Two officers from the Omaha Police Department—Defendants Cory Billings and Charles Sweeney—responded to the scene, along with medics from the Omaha Fire Department. (Filing No. 86.) An ambulance transported Mr. Willis to the University of Nebraska Medical Center ("UNMC") with Officer Sweeney in tow. (Filing No. 86.) Officer Billings followed the ambulance

1

in his cruiser. (Filing No. 86.) Mr. Willis and both officers arrived at the trauma bay within UNMC at 2:38 a.m. (Filing No. 86.) During his time there, Mr. Willis' wounds were stitched up, and he underwent an X-ray and a CT scan. (Filing No. 86.) The parties tell two different stories as to whether anything else happened in the trauma bay.

At his deposition, Mr. Willis testified that as he was "getting ready to leave"[1] the hospital, one of the two uniformed Omaha Police Department officers present in the trauma bay said "hold on . . . [t]here's new procedures." (Filing No. 88-3.) According to Mr. Willis, when he asked what those procedures were, the officer answered "[w]e doing an anal body cavity search on you." (Filing No. 88-3.) Mr. Willis alleges he protested, but one officer still "grabbed [his left] hand" while the other[2] "handcuffed" his right hand to the bed, "whispered something in [his] ear" and "rammed his hand in my an[us]" to "look[ ] for drugs." (Filing No. 88-3.) The officer who performed the search had also donned a "blue glove[.]" (Filing No. 88-3.) Mr. Willis alleges that the search took twenty seconds to complete. (Filing No. 88-3.) He testified the search was "painful," that he saw blood on the officer's glove after it was conducted, and that the search caused injuries to his anus. (Filing No. 88-3.)

Mr. Willis alleges in his Second Amended Complaint that "approximately two doctors and three nurses" were in the "treatment room" during the search. (Filing No. 63.) He agreed that those medical professionals "would have seen what was going on" at his deposition. (Filing No. 88-3.). In fact, he alleges that he asked the onlookers why they "let [the officers] do this"—and [n]obody responded." (Filing No. 88-3.) Mr. Willis could not remember which officers were responsible for those actions—he would need to pick them out of a "lineup" to do that. (Filing No. 88-3.) Nor

---

[1] The precise time Mr. Willis alleges the search occurred has been a moving target. Mr. Willis initially testified that the search happened around 5:00 a.m. (Filing No. 88-3.) But after Defendants moved for summary judgment and produced body-worn camera footage from Officers Billings and Sweeney establishing that both left the hospital long before then, (Filing No. 88-1), Mr. Willis filed a declaration stating that he was "mistaken" about the time of the search and now alleges the search "occurred within a few minutes after 3:37 a.m. (Filing No. 96-1.) There is no body-worn camera footage capturing the trauma bay after 3:37 a.m.—Officer Sweeney's camera stops recording at that time. (Filing No. 88-1.)

[2] Though the Second Amended Complaint does not specifically identify the officer who allegedly conducted the search, Mr. Willis suggests it was Officer Billings in his Brief. (Filing No. 97.)

2

could Mr. Willis remember if he had even seen either officer before the search. (Filing No. 88-3.) But because he *does* remember that both officers were "white males," he draws the conclusion that Officers Billings and Sweeney—who match that general description and were present in the trauma bay—were the culprits. (Filing No. 88-3; Filing No. 63.)

Defendants' version of events is—simply put—that the search never happened. They say that Mr. Willis received treatment for his wounds, spoke with OPD Detective Nicole Walker for around twenty minutes,[3] had his injuries photographed by a forensic technician, was examined by UNMC physician Dr. Charity Evans,[4] and was then discharged from the hospital. (Filing No. 86.) For their part, Officers Billings and Sweeney expressly denied conducting a cavity search on Mr. Willis. (Filing No. 86.) Defendants also point to medical records from the examination conducted by Dr. Evans indicating that there was no evidence of bleeding or any injury to Mr. Willis' "perianal area." (Filing No. 86.) They also direct the Court to another of Mr. Willis' medical records dated ten days after the alleged search with no mention of any injury to his anus. (Filing No. 86.)

Wherever their narratives diverged, the parties agree that Mr. Willis left UNMC around 5:15 to 5:20 a.m. that morning. (Filing No. 94.) OPD officers later apprehended Mr. Willis' assailant and Officers Billings and Sweeney eventually booked him into the Douglas County Correctional Facility. (Filing No. 86.)

## STANDARD OF REVIEW

Summary judgment is "appropriate if the evidence, viewed in the light most favorable to [Mr. Willis], shows no genuine issue of material fact exists and the [Defendants are] are entitled to judgment as a matter of law." *Laney v. City of St. Louis, Missouri*, 56 F.4th 1153, 1155 (8th Cir. 2023). The Court "draw[s] all reasonable inferences in [Mr. Willis'] favor." *Ball v. City of Lincoln,*

---

[3] The parties disagree as to the nature and extent of Mr. Willis' conversation with Detective Walker. Mr. Willis claims that she "came in [and] walked right out of the room" after saying "that's Freddie Willis. He's not going to talk to us." (Filing No. 88-3.) Detective Walker, however, testified that she "[s]poke to him about the incident, his recollection about what happened." (Filing No. 88-8.) And Defendants point to Detective Walker's report from that interaction, suggesting an "interview" with Mr. Willis indeed took place. (Filing No. 88-12.)

[4] Mr. Willis testified at his deposition that he does not remember the examination. (Filing No. 88-3.) He does *not dispute*, however, that the examination occurred for purposes of this motion. (Filing No. 94.)

3

870 F.3d 722, 727 (8th Cir. 2017). But Mr. Willis must do more than simply show that there is some metaphysical doubt as to the material facts. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). To show that disputed facts are material, he must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. Quinn v. St. Louis Cty., 653 F.3d 745, 751 (8th Cir. 2011). "Even if some factual dispute exists, [Defendants are] entitled to summary judgment if the evidence, taken as a whole, is so one-sided that a fair-minded trier of fact could not find for [Mr. Willis]." Ball, 870 F.3d at 727.

## DISCUSSION

Defendants' Motion seeks dismissal of each of Mr. Willis' claims. Mr. Willis' Second Amended Complaint alleges § 1983 Fourth and Fourteenth Amendment illegal search, excessive force, and failure to intervene claims against Officers Billings and Sweeney. (Filing No. 63.) Mr. Willis also asserts *Monell* claims against the City of Omaha for alleged unconstitutional policies and unofficial customs authorizing body cavity searches on crime victims. (Filing No. 63.) However, the Court need not delve into the governing substantive law surrounding these constitutional claims to resolve Defendants' Motion. The parties agree this case turns on the narrow issue of whether the alleged body cavity search forming the basis of this action happened at all. At this stage, that issue is resolved by applying the well-established summary judgment standard to the evidence before the Court.

When, as here, "opposing parties tell two different stories" at summary judgment, "the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." Reed v. City of St. Charles, Mo., 561 F.3d 788, 790 (8th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). Indeed, Mr. Willis "may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." Reed, 561 F.3d at 790. He cannot resort to "speculation, conjecture, or fantasy" to meet that standard. Id. Nor can he "stave off summary judgment armed with only the hope that the jury might disbelieve witnesses' testimony." Zubrod v. Hoch, 907 F.3d 568, 577 (8th Cir. 2018). The evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Reed, 561 F.3d at 791. But that is not the case here.

There is no evidence—beyond Mr. Willis' self-serving allegations—that a body cavity search ever occurred. Officers Billings and Sweeney testified that they did not conduct a body cavity search of Mr. Willis. (Filing No. 88-7; Filing No. 88-13.)[5] Detective Walker says the same—and that she did not see any officers conduct such a search, nor could she think of any reason any officers would have conducted a body cavity search on Mr. Willis. (Filing No. 88-8.) Further undermining the plausibility of Mr. Willis' story is his allegation that medical personnel in the trauma bay would have seen the alleged search but did nothing to intervene. (Filing No. 63; Filing No. 88-3.) The Court has reviewed video footage from Officer Sweeney's body-worn camera depicting the trauma bay in the moments just before Mr. Willis now alleges the search occurred. (Filing No. 88-1, Ex. 15; Filing No. 95.) That footage shows two UNMC medical professionals seated at a desk directly outside the trauma bay, with a clear line of sight to Mr. Willis' bed. (Filing No. 88-1, Ex. 15.) No reasonable jury could believe they had a front row seat[6] to "the greatest personal indignity"—a twenty second "body-cavity search"—and sat idly by. *Bell v. Wolfish*, 441 U.S. 520, 594 (1979) (Stevens, J., dissenting).

Mr. Willis' recall of his interaction with Detective Walker casts even more doubt on his version of events. He says Detective Walker entered the trauma bay, identified him by name, remarked that Mr. Willis was not "going to talk to us," and left. (Filing No. 88-3.) Detective Walker remembers things differently—and her recall is supported by the evidence. She testified that she never had "any contact with Mr. Willis" before that night. (Filing No. 88-8.) Detective Walker also testified that she interviewed Mr. Willis in the trauma bay at considerable length about "the incident" and Mr. Willis' "recollection of what happened." (Filing No. 88-8.) The Court does not just have to take Detective Walker at her word, either. Her report from that interview contains a "summary" of her conversation with Mr. Willis, including quotations from statements he purportedly made. (Filing No. 88-12.) Also present in the report are granular details about the events surrounding the stabbing, like the color of Mr. Hill's knife handle. (Filing No. 88-12.)

---

[5] Though not dispositive on the issue of whether such a search occurred here, Defendants produced the City of Omaha's written policy on body cavity searches. (Filing No. 88-2.) The policy provides that "[b]ody cavity searches shall only be conducted with a warrant approved and authorized by a Judge." (Filing No. 88-2.)

[6] Notably, Mr. Willis has never wavered in his contention that medical personnel were present during the alleged search. (Filing No. 15; Filing No. 63; Filing No. 88-3.)

Moreover, objective medical records belie Mr. Willis' narrative. Dr. Charity Evans examined him before he was discharged from UNMC. (Filing No. 88-5.) Mr. Willis was "disrobed entirely" at that time. (Filing No. 88-5.) Medical records from that examination provide there was "*[n]o evidence of injury*" to Mr. Willis' rectum; that his "[p]erianal area [was] normal;" that he had a "normal sphincter tone;" and, most notably, that there was no sign of blood. (Filing No. 88-5) (emphasis added). That record is dated May 21, 2020, at 5:13 a.m.—after the search would have occurred under either timeline posited by Mr. Willis. (Filing No. 88-5.) Mr. Willis also returned to UNMC just ten days after the alleged search seeking treatment for left shoulder pain from Dr. Eryn Dichari—and there is no mention of the search or any attendant injuries to his anus in records from that visit.⁷ (Filing No. 88-5.) All these facts are undisputed. (Filing No. 94.) The Court concludes that the medical records refute Mr. Willis' allegation that he "suffered injuries to his anus as a result of" the search, generally, or that he bled after the search, specifically. (Filing No. 63; Filing No. 88-3.)

The Court also notes that Mr. Willis has failed to adduce any evidence contradicting—or even explaining—these evidentiary gaps in his story. Mr. Willis brought this case in April 2022. (Filing No. 1.) Per the Court's Second Amended Final Progression Order, he had just under two years to conduct written discovery and take any depositions necessary to support his claims. (Filing No. 72.) To date, however, Mr. Willis has not identified the "two doctors and three nurses" he alleges witnessed the search, nor has he presented testimony from Dr. Evans about the pre-discharge examination. (Filing No. 63.) Nor did he depose Dr. Dichari to see whether she has any recollection—independent of what the medical records say—of Mr. Willis complaining about an anal injury ten days after the purported search, for example. Without that kind of evidence, the allegations in Mr. Willis' Second Amended Complaint—and his deposition testimony mirroring those allegations—are not enough. *See Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) ("[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

---

⁷ Mr. Willis first sought treatment for injuries he purported to sustain in the search just over two months later, while in the custody of the Douglas County Department of Corrections. (Filing No. 96-1A.)

The Court therefore finds that Mr. Willis' allegations insufficient to avoid summary judgment because they are "blatantly contradicted" by the record. *See, e.g.,* Reed, 561 F.3d at 791 (affirming summary judgment where there was "overwhelming evidence" refuting the plaintiff's version of the events in question, including deposition testimony of police officers and medical records); Gunter v. Twp. of Lumberton, 535 F. App'x 144, 150 (3d Cir. 2013) ("[Plaintiff's] account is inconsistent with the objective evidence . . . and no reasonable jury could believe it."). There may well be a factual dispute here—whether the search occurred—as Mr. Willis argues. But there is no *genuine* dispute because a "reasonable jury" could not believe Mr. Willis' version of events given the evidence contradicting it. *See, e.g.,* DRB No. 24, LLC v. City of Minneapolis, 976 F. Supp. 2d 1079, 1086 (D. Minn. 2013) ("[A] dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.").

In response, Mr. Willis asserts that the competing stories offered by the parties necessitates a trial. He argues—in part—that Defendants' Motion presents credibility issues that must be resolved by a jury. (Filing No. 97.) Some of the arguments Defendants make seem to invite the Court to pass on Mr. Willis' credibility, something it cannot do at summary judgment. (Filing No. 87); *see* Torgerson, 643 F.3d at 1042 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). The Court has not considered those arguments. Instead, it has carefully reviewed the evidence[8] and determined that it is "so one-sided that a fair-minded trier of fact could not find for [Mr. Willis]." Ball, 870 F.3d at 727.

In sum, Mr. Willis failed to substantiate his allegation that an anal body cavity search occurred with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." Moody v. St. Charles Cnty., 23 F.3d 1410, 1412 (8th Cir. 1994). His Fourth and Fourteenth Amendment illegal search and excessive force claims against Officers Billings and Sweeney therefore collapse. Mr. Willis' failure to intervene claim against the officers falls with them. *See* Bloodworth v. Kansas City Bd. of Police Commissioners, 89 F.4th 614, 628 (8th Cir. 2023) ("To prevail on a claim of failure to intervene . . . [the plaintiff]

---

[8] The Court has also considered Defendants' argument that Mr. Willis' Declaration is a "sham affidavit" that should be disregarded at summary judgment. (Filing No. 99.) The Court need not resolve that issue, given the Court's determination that Mr. Willis' claims fail as a matter of law for other reasons.

must prove an underlying constitutional violation."). And so does Mr. Willis' *Monell* claims against the City of Omaha—"there can be no *Monell* liability if there was no underlying constitutional violation." *Roskens v. Graham*, 435 F. Supp. 3d 955, 989 (N.D. Iowa 2020).[9]

Accordingly,

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Filing No. 85) is granted.

2. Mr. Willis' Second Amended Complaint (Filing No. 63) is dismissed.

3. A separate judgment will be entered.

Dated this 29th day of July, 2024.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge

---

[9] Beyond that substantive defect with his *Monell* claims, Mr. Willis also failed to dispute any of the facts in Defendants' Statement of Material Facts relative to the City of Omaha's official and unofficial policies or customs, including Defendants' assertion that "[t]here is no unofficial custom by Omaha Police officers to conduct body cavity searches in violation of the written policy." (Filing No. 94.) And Mr. Willis failed to respond to Defendants' *Monell*-related arguments in his Brief, too. (Filing No. 97.) That failure constitutes a waiver of any arguments he had. *See Goodwin v. Vill. of Oakview, Missouri,* No. 19-00009-CV-W-ODS, 2019 WL 1344727, at *3 (W.D. Mo. Mar. 25, 2019).